Case number 17-1040 et al. Old Dominion Electric Cooperative Petitioner v. Federal Energy Regulatory Commission. Mr. Freitman for petitioners, Ms. Carrick for the respondent. Good morning. Good morning. Thank you, Your Honor. It may please the Court, Jonathan Franklin for Dominion. With me at council table is Adrian DeClaire representing Co-Petitioner ODEC. Your Honor, in approving an allocation of costs for rate-making purposes, FERC must follow the cost causation rule, which requires that the costs of a project allocated to a beneficiary must be at least roughly commensurate with the benefits received from that project. In this case, FERC abdicated that legal responsibility when it allocated to the local Dominion zone 100% of the costs of high-voltage projects, even though FERC has found and continues to find that such projects have significant regional benefits that warrant regional cost allocation. This case is, in fact, even more straightforward because FERC has in place an accepted and unchallenged methodology for regionally allocating the costs of high-voltage facilities throughout the PGM region, and FERC continues to apply that methodology to other high-voltage projects in the region. They say that this case is different because the facilities are not selected by the region's transmission providers, and then they quote from Order 1000 that says, in order for a transmission facility to be eligible for the regional cost allocation methods, the region must select the transmission facility in the regional transmission plan for purposes of cost allocation. So they say, as you're aware, that this is different from the general principle, or at least is a carve-out from the general principle that you articulated. What's your response to that? Putting aside the intervener's argument that these projects are actually still selected, I think that, first of all, let me go through the history here. When these projects were first proposedó Well, let me stop you right there. They're not selected, are they? I mean, they're approved but not selected, and I would like to be educated on that, but that's the way I read the record here. I'm not here to speak for the interveners, but their argument is that they were selected for cost allocation and then the cost allocation was improperly 100 percent to the local zone. But putting that to one side, Your Honor, these projects were, in fact, initially selected. When they were proposed, they were selected for cost allocation, and the PGM board approved them, and they were submitted to FERC for regional cost allocation. After that point, the owneró That's because the old tariff says if it's a high-voltage transmission line, it'só Yes. It's approved. But the argument is circular here. We are arguingóthis entire argument here is these should be selected for regional cost allocation because they have regional benefits. It is not an answer to that question to say these projects were not selected for regional cost allocation because they weren't selected for regional cost allocation. What they're saying, in essence, they're not needed. These projects are not needed, and I know you have a factual response to that, but that seems to be the sense, at least some of the comments. After FERC's initial determination, there are a bunch of comments submitted that say, wait, this is different because this project was not needed. That I would dispute, Your Honor. That's what people said. They might have said that at some point, but FERC never said that, and the reason FERC never said that is nobody is challenging that these are appropriate projects, that these are necessary projects. In fact, PGM determined not only were they needed, but they had to go into service within three years because they were what, for PJM, which is an independent entity, classifies as immediate need reliability projects. The cost causation rule which FERC has to apply exists primarily or in large part to avoid the free rider problem. To the extent that these projects weren't selected for cost allocation, the only reason is because the owners, not including my client Dominion and not including ODEC, voted and awaited voting not to allow them to be allocated regionally. If that principle applies, there is nothing left of the cost causation rule because that means that any owners who don't want to pay for a project can then vote it out of regional allocation. In fact, getting to Judge Kavanaugh's point, the other owners aren't really arguing in this appeal that these aren't necessary projects. They know they are. These lines are rusting out. These are high-voltage steel transmission lines that carry long distances. PJM found that if these projects do not proceed as Dominion has planned them, there will be multiple voltage and thermal reliability problems. So the other owners know that these are important projects. They know that they are going to benefit from them. They just don't want to pay for them. There's an obligation, as I understand it, under Order 1000 to plan at the regional level, right? So all of these owners who are saying no to this project, they're part of an entity that has to do regional planning. Yes. And the operating agreement that implements that obligation contemplates three different kinds of plans, right? There's the planning that's done regionally through PJM. There's the planning that's done by the NARIC, which is the safety standard setting. And there's the planning that's done unilaterally by individual members when they go to FERC. Why is it arbitrary for FERC to say, if you want something addressed at the regional level, deal with it through regional planning? First, I understand the point, Your Honor, but first, this was, in fact, regionally planned. Those criteria that you noted were all part of the regional plan. This is in the RTEP. This went through the regional planning process. The regional planning process, as Your Honor just noted, includes criteria, various criteria, including the 715 criteria. Nobody is arguing that this is an inappropriate subject for the regional plan. But there's a difference between the regional plan and regional cost allocation, correct? The only difference is that regional cost allocation depends on who benefits from the projects that are eventually approved in the regional plan. This is a project that was approved in the regional plan. It was presented to and approved by the PJM board. It was vetted by PJM independently. It was selected as a project in the RTEP. The question for FERC then becomes, under the cost causation rule, who benefits? And FERC's problem here is that they made no effort to match costs and benefits. Instead, their principal argument is, in fact, I think, as arbitrary as the rule itself. The rule is because it's listed, because the criteria are listed on one form, we're not going to allocate them. And we would submit that is literally elevating a form over substance. No, the more charitable view of their position is that things listed on the form 715 may or may not be regional. Some implicate regional interests. A lot of them implicate purely local interests. But the best justification of their position is that when one utility unilaterally makes a 715 filing and says, gee, we want to replace lines more quickly than we otherwise would, it may or may not be a good thing, but it's a unilateral decision unless and until the co-operators agree. Well, first of all, it wasn't a unilateral decision, as I was just saying, because it went through the proper process. The 715 filing is unilateral. Right, because that's what the filing is, but the criteria are listed in the RTEP. You know, it could be as a matter of substance. If FERC wanted to go with substance, they could say, we don't think that Form 715 projects are appropriate subjects for regional applications. Right, but isn't it also a given that something could be covered by a 715 filing and also covered by either the regional criteria or the RTEP criteria? Could be, Your Honor. Could be, but not this case. Not here, Your Honor. So what we have here is a case where your client adopts a standard, you know, a more protective standard saying we want to replace lines sooner. The regional planners and the safety experts could have adopted the same planning criteria. The regional people are obligated to address all these issues under Order 1000, and they say we adopt a lesser standard. Here's what the point I'm trying to make is they didn't adopt a lesser standard. They did adopt, as part of the regional planning process, the 715 criteria. There are other ways. If the true objective of the amendment only applies to bar reimbursement if this particular project is covered by the 715 standard but not the regional standard. But it's still an RTEP project, which means that, in fact, under our agreement, we own the assets but PJM manages them. We were directed or selected by PJM to build these projects. If we don't build these projects, we're violating our operating agreement with the other owners. The point I'm trying to make is if there was a question about substance, if the argument was we don't think these projects, as Judge Kavanaugh said, are necessary, there are ways that that objection can be made. FERC always has an obligation to say even if a project goes through the regional plan, the rates are not just and reasonable, or there could be an argument that the costs are imprudently incurred. Nobody's making that argument. And the reason they're not making that argument is that everybody understands that these are good and appropriate projects that benefit everyone in the same way that other high-voltage projects do. If some version of this idea that because it's not selected for regional cost allocation, it can't be selected for regional cost allocation or the law, then what you'll see is other owners will just then say, we decide that even though we think this project is a good project and even though it meets our current criteria for inclusion in the RTEP, we're not going to allow it to be regionally planned. And then FERC will just rubber stamp that and say, okay, 100% cost allocation. That's the free rider problem in a nutshell. The reason that these other owners don't want these projects to be allocated is not that they don't want the projects. It's that they don't want to pay. I get that, and I get you have flagged a very real concern about free riding. But there's potentially a different free rider problem, which is one utility wants to replace lines, and I understand this probably is not your case factually, but one utility wants to replace lines much earlier than they have to. And that's fine, but they don't necessarily get to make all the other utilities pay for that. Absolutely. I think that's what I just mentioned, and that is that there are other ways to deal with that. If the objection is you have a criteria here that is inappropriate, that this criteria replaces lines earlier than they should be, there are many different ways to make that objection. That can be vetted through the PJM process, number one, and they can say we just think these criteria are inappropriate. Number two, there can be an objection made with FERC that these rates, even though they result from the RTEP, are unjust and unreasonable. Number three, you can always argue that the costs are not imprudent, that they are prudently incurred. But they're not necessarily arguing that the criteria are inappropriate, but they're arguing that the criteria have not been adopted at the regional level yet, correct? Well, they were adopted, and I keep saying that they have been adopted at the regional level. The RTEP plan, and I can cite you the provisions, says the criteria, and Judge Katz has pointed out, are including NERC standards, PJM standards, and Form 715 standards. And these weren't on the first two. This project was not necessary for those criteria. It was for the third. But they have been adopted in the regional plan. And again, we argued below, and we're happy to vet this through the PJM, through FERC in terms of the reasonableness of our standards. Nobody is arguing that these are inappropriate. And I was responding to Judge Katz's hypothetical. His hypothetical was one where the standards are viewed as unreasonable or something like that. Can you explain again so I understand very clearly the difference between selected and approved? Because there's a lot of the key word that I keep circling in FERC's brief is selected. And I understand your project is approved at the regional level, but they say not selected. Now, tell me how to resolve that. Well, I think that's a FERC word, Your Honor. It's not in the RTEP. It may come from Order 1000. You can ask them. My understanding is what they mean. I'm going to ask them, yes. And I think I meant to my rebuttal, but I hope I didn't have to. You can keep going. But what I think FERC means by that is, again, my circular argument, meaning it's not selected because an amendment was proposed that would deny regional cost allocation. It's in the plan. Yes. Because under, I'm not sure if it's Order 1000 or the operating agreement, but there's this principle that you can put in the plan projects that have primarily local benefits just for purposes of information, coordination, but without doing regional cost allocation. Actually, it comes from the owner's operating agreement, and you can see this. You can find it online in the PJM website. But what it does say is not just what Your Honor said. It actually says the RTEP planning criteria shall include, and you can see this at the interveners in support of our brief at page 18, shall include, among other things, the Form 715 criteria. So it's not just informational purposes. These are regional planning criteria for the RTEP, which is the regional planning. But if you go back to Order 1000, it says there's a distinction. If I've jotted down the right verbs, this will jibe with Judge Kavanaugh's question. There's a distinction between facilities included in the regional plan, which could be done for informational or coordination purposes, and facilities selected for the purpose of cost allocation, right? Yes, and I would say the proper understanding of that would be that some projects have regional benefits that are in the plan and some do not. In fact, most do not. And the mere fact that something is on one owner's 715 filings and the mere fact that it is included in the plan in the sense that you read the plan and someone's saying here's what we're doing in one of our 715 filings, neither of those tells you that there are regional benefits or the costs are appropriately spread. Absolutely, and I think that's the nub of our argument, is that it is arbitrary to say just because it's on a Form 715 that it has no regional benefits. We admit most Form 715 plan projects do not, and they will continue to not have regional cost allocation under our argument. So it's arbitrary in your view for them to say that a project that has regional benefits and is approved at the regional level has not been, quote, selected. Yes, I think so, and there are plenty of different ways. Because that's wordplay to get around, in your view, the substance of what's going on. Absolutely, Your Honor, and I think it's circular wordplay, too, because in their view selected means anything that the owners don't vote in for regional cost allocation. The cost causation principle at the bottom depends on who benefits, not where the need for the project was first identified. And to Judge Katz's earlier question, the check on someone getting the free ride or benefit from the other direction, in other words, going forward with a project that has regional benefits but the others really don't think is necessary, the check on that is? It's three checks, Your Honor. One is you can bring that up substantively at the PGM level. We tried to do that. We tried to have that discussion, and the owners said, no, we just want to misallocate the cost, in our view. Two, even if it comes out of the RTEF, even if it comes out, FERC always has an obligation to ensure just and reasonable rates. And you can argue that in Judge Katz's hypothetical, which is a good one, that no, these are not just and reasonable. If you want to retire your lines at too early a date, we're not going to make anybody pay for that. You can do it. You have to pay for it. And third, there's always an argument you can raise that costs were not prudently incurred. What we're saying here now, I think, is that we'd be happy, frankly, we'd be happy to have the substantive debate about whether our end-of-life criteria are appropriate. We will win that debate because what we're talking about here is prudent planning. Under FERC's rule, if these lines actually rust out and fall down, as everybody says they will, we will get regional cost allocation because at that point there will be an existing violation that qualifies us under one of the other two criteria. I understand the point about other checks. What I'm struggling with is you have this scheme that imposes not just the power but the duty to plan at the regional level. You have this potential problem of misaligned incentives. I don't know why it wouldn't be arbitrary for FERC just to say if it's a regional issue, address it through prong one, the regional planning criteria. All I can say is it was addressed regionally. I'm going back and forth here. But I think that to take the next step and say that we will hereby exclude from cost allocation anything that a sufficient number of the owners vote to exclude from cost allocation, that, it seems to me, would eviscerate the cost causation rule. Just at the regional level, isn't the problem, maybe I'm wrong about this, that end-of-life criteria have not been addressed at the regional level yet? Well, we asked them to be addressed. You'll see that in the record of our case. But doesn't that get to Judge Katz's question that they haven't been addressed? Well, they have been in the sense that, and, again, I'm going back to it, that the 715 criteria are RTEP criteria. So what the other owners said, well, we said let's address them. No, they have. They have been in the sense, you know, you think it's arbitrary, but you're saying the regional rule is wait until the line rusts out, and then you do your project and you get regional cost shifting. You're saying you've adopted a better rule that's going to do the replacement sooner and save everybody cost and may be safer and such. What I'm saying, Your Honor, is we want to have that debate. If they want to have that debate, we'll have that debate. That debate was never had. Nobody ever debated the merits of our end-of-life criteria and said they're inappropriate, we will not include them, we think they're wrong, and the reason I think I just said it. They have not been adopted at the regional level. That's the point, right? Because they're – and maybe it's dumb that at the regional level these have not been adopted, and you're ahead of the game in terms of prudent planning. Well, they have been, again, because they are part of the RTEP process. These are not projects that we just decided willy-nilly we're going to build and have nothing to do with PJM. They went through the PJM process. They were approved by the PJM board. We were designated as the owner to build them. They were initially approved because they were in your 715 filing under the old tariff. And they would be approved tomorrow also for that reason. FERC says that approval is only to ensure that they are developed in a manner that is consistent with the overall regional plan. I'm sorry. They were selected, initially selected, because they're in your 715. They were initially selected. They were initially both approved and selected. Then they were, in FERC's view, deselected, and the only reason they were deselected is not having anything to do with the criteria themselves. It has to do with the fact that there were not regional criteria yet. No, they were not the other kinds of regional. That's what I mean. Because these – let me just – You're saying the 715 criteria are regional criteria. They can include regional criteria. They can. Because we identified through those criteria regionally beneficial projects that PGM concluded, yes, we were right. These are projects that are going to have not just local but regional reliability violations and need to be built within three years as immediate need reliability projects. Go ahead. Is there a mechanism by which individual utilities could go to the regional entity and say we think as a matter of prudent planning we need a standard for end of life or whatever at the regional level? I take it there is because you said you tried to do that. We did, yeah. Okay. So if that is – let's assume that's arbitrarily denied because there are all these free riders in the Midwest that don't want to pay for your very prudent redo or earlier rebuild. Do you have recourse – why can't you go to FERC and say that decision was arbitrary? We did. So you have a mechanism to – It's this case. Among the arguments we made in this case, and we actually made it on appeal to this court as well, is if you think, FERC, that somehow all of the projects on the Form 715 have to be only locally beneficial projects, then the solution to that is to put the end of life criteria into the RTIP. And we definitely made that argument below. We actually made it in our opening brief to this court as an alternative, and we do argue that. But I think that ultimately what we're asking for is to vacate the initial order because what FERC said was we're not going to do that, and we did make that argument. We're not going to do that. We're not going to get into that issue. We're just going to arbitrarily decide that everything that's on the Form 715 is ineligible for regional cost allocation even though, number one, it is approved through the RTIP process, and number two, has regional benefits. And their justification, which I haven't gotten to yet, is actually not anything we've talked about right now. Their justification was that we looked at historically the vast majority, more than 95 percent of these. Yeah, well, you have a very strong argument on that. That was their principal basis. They have this other argument, though. I mean, I don't know if it's alternative, but this other argument that we've been talking about for the last 20 minutes. But I'll be just interplay between the two. Sorry, maybe I missed this, but just tell me how this comes up. The main issue below was teed up as what happens when the criterion is in the 715 filing, which may implicate local interests, may implicate regional interests, but is done unilaterally. You went to FERC and said, even if we're wrong about all of that, we want you to order PJM to change the regional criterion to adopt your end-of-life standards. Yes, and I don't have the site for you right now, but, yes, we did. Maybe I missed that, but where would I find that? I will. When I come back up, I will try to have that site for you. But, yes, we made that as an alternative argument. It wasn't so much as even if we're wrong. We just said, look, if you want to do this a different way that actually deals with the substance, what you can do is say, hey, let's make them put the end-of-life criteria into the RTEC. They connected to that, and FERC didn't do it. And we argue that that's another way you can get there. But we think the primary problem here is that FERC was arbitrary and said, just because it's on the Form 715, we're not going to regionally allocate it without looking at the benefits and the costs. And their arguments are even more arbitrary when they get down to the point of saying that, in their view, you can allocate 100% of the cost to any beneficiary that receives more than trivial benefits. That's just, again, just completely rights that cost causation. And I think the reason that they're making those arguments is they understand that the cost causation rule applies here. And they can't just say, because a majority of the owners voted it out of cost allocation, we, FERC, who have an independent duty here, do the same. I mean, it's clear to me that why the other owners don't want to do it, don't want to pay for it. What's not clear is why FERC would rubber stamp that and say, okay with us. We'll give you some time on rebuttal. Thank you. Good morning. Lona Perry for the Commission. Under Order 1000, Order 1000 requires for you to be eligible for regional cost allocation that the region must select the project as a more efficient or cost-effective solution to regional transmission needs. And the reason why the Commission found this was not falling under that category was because this was solely in response to Form 715 criteria that were sponsored only by Dominion. And PJM, in its regional, in applying its regional criteria, and in applying the NERC national criteria for safety, found no basis for building this project. The only reason the project was... So this project's not necessary in your view, in FERC's view? Yes, Your Honor. I mean, from PJM's view, PJM, I think PJM has been getting a little undermined here. They are responsible for the security and the reliability of this grid. They do enormous amounts of modeling and testing and predicting what problems there might be in the future and preemptively building projects in order to try to prevent that. Under their criteria, applying their models, there was no need to rebuild this project. And in that... You don't disagree with what FERC said earlier, which is that as a categorical matter, high-voltage transmission lines have regional benefits. The regional benefits, Your Honor, were tied to the fact that it was the product of regional planning. And that's why the Commission initially rejected this tariff provision, because they thought that the transmission owners were talking about projects that were being approved in the regional planning process. In 2013, you approved the implementation, the scheme through which PJM implemented Order 1000, under which high-voltage transmission lines would automatically qualify for regional cost allocation. And you did so on the ground based on your view that high-voltage transmission lines have regional benefits. And you don't seem to have backed off that premise. It was because the high-voltage lines were the product of the regional planning process. And if I could direct your attention... Let me focus right on that. Could a project have regional benefits without having been the product of the regional process? Well, the way it works, Your Honor, which is why... The answer to me seems to be yes to that. Well, the way it works is this is why I included the PJM opinion, the 157 FERC 61152 in my brief, which is a case where it's exactly the same thing. It's a 500-kilovolt rebuild of a line in the Dominion zone. But PJM found that it would solve a regional problem, a general deliverability violation under PJM's own criteria. And so, therefore, it did both. It solved the local criteria problem, but it also solved the regional criteria problem. And, therefore, it was entitled to regional cost allocation. But I'm not sure my question was answered. Could something have regional benefits without having been planned at the regional level or planned to meet the criteria at the regional level? Could something still have regional benefits? It seems to me yes, right? Well, yes, Your Honor. But the point is that Order 1000 was specific about being to be eligible for this regional cost allocation to the entire region, that it must be the product of regional planning among the transmission planners. What about the idea that counsel says, well, then the majority of the two-thirds get together and just say we don't want to pay for this? How is that concern addressed or can it be addressed? Well, Your Honor, it's – In other words, they come through – I think you understand this – but they come through with their project, and it's a good project, and it's going to be helpful at the regional level, but the others decide, well, they're going to go through with it anyway. We don't want to pay for it, though. Well, Your Honor, you have to understand, though, this is true of all of the transmission owners. I mean, they are agreeing to this for themselves as well as Dominion. It's because they, the majority of the owners in the region who are conducting the regional planning, made the determination that they think it is appropriate for these kinds of projects to be charged to the – and it applies to them as well as to Dominion. But your justification for regional cost allocation for high-voltage projects, at least in 2013, seems independent of the process point about regional planning. You say high-voltage transmission facilities have significant regional benefits that accrue to all members of the PJM transmission system. Your Honor, what I was – sorry, I got distracted. But if I could go back to – I want to direct your attention to the order on rehearing of that 2013 order, and it's 147 FERC 61-128. And if you look at paragraph 329 of that decision, the order specifically goes through the regional plan development process, describes the process that PJM goes through to develop regional projects. Sorry, the 2013 compliance order is no longer effective? Well, no, I'm saying this explains what they meant by that statement. Okay. And then they go on in that same paragraph. The rehearing order in this case. No, no, Your Honor. The rehearing – this is the rehearing order of the 2013 order. This is the rehearing on the order on capacity compliance. Okay. Yes. Okay, so on rehearing – I'm sorry, which paragraph? It's paragraph 329. This is the 147 FERC 61-128. And the commission there specifically says that when a project is selected for purposes of cost allocation in the PJM regional transmission planning process, that selection is a recognition that the project provides regional benefits. The commission there was specifically saying that it is because it is the product of this regional planning process that we believe that it has regional benefits. So it wasn't saying just because it's a high-voltage project that it automatically has regional benefits. And in that respect, I would direct your attention to the 2014 Illinois Commerce Commission case where the Seventh Circuit expressed concern about the concept that just because a project is high-voltage that we assume it automatically has benefits to the entire region. And they rejected a pro-rata cost allocation of 500-kilovolt projects in PJM because there was no showing that a project in New Jersey that was built to correct violations in New Jersey benefited. But you aren't disputing here that this project has regional benefits. What I'm saying, this project has benefits that go outside of the zone. Otherwise known as regional benefits. Well, regional benefits, you have to understand, though, half of the costs of the regional facilities are allocated pro-rata to everybody in PJM. Under a methodology that you approved as appropriately weighing the short-term obvious immediate local benefits and the longer-term hard-to-quantify, again, your phrase, regional benefits. Exactly, Your Honor. But for projects that were the product of the regional planning process. That's where you get the knowledge that they actually provide these regional benefits. And what the court in Illinois- Does FERC have a view one way or the other on whether high-voltage transmission lines in fact provide regional benefits? Put aside any question of who's approved what. Well, Your Honor, we know what these lines actually do and who they actually benefit because there is the DFAX, the distribution factor analysis, flow-based analysis, which tells us if you look at Joint Appendix 50, it's the analysis for the Elmont-Cunningham line, and 81% of the benefits of that line go to the Dominion Zone. And if you look at JA-236, which is the analysis for Cunningham-Dooms, that's 71% go to the Dominion Zone. And there's some benefit, some small benefit, to adjoining regions. But that's who benefits from these facilities. That's who gets the use. Yeah, but that, what you just said, doesn't take account of the 50% analysis, which is the postage stamp, which you approved as appropriately recognizing the more regional, longer-term benefits. And if you apply both prongs of the methodology that you approved, it turns out that the overall benefit to Dominion is under 50%. Because of the pro-rata allocation, Your Honor, and that's why I am referring to the 2014 Illinois Commerce Commission case, which postdated the 2013 PJM compliance orders, by the way, where the court specifically questioned the assumption that there is pro-rata benefits to everybody in the 13-state region from projects that are intended to address violations in New Jersey. Again, put aside trying to disentangle the process issues from the substance issues. So put aside any question of who approved what. Does FERC still think that the 50-50 methodology previously approved, right, half is defects and half is postage stamp, do you still think that, in fact, reasonably measures and allocates cost? It does, Your Honor, for the facilities that are selected in the regional plan for purposes of cost. Well, now you're just fighting my hypothetical. Well, no, not at all, Your Honor, because the point is that there are regional needs that need to be addressed. And when you pick a project to address those regional needs, that has regional benefits. But in this case, as the commission said, all you have to do to put a project in your criteria under 715 is you file a 715 that includes criteria that allows you to build this project. Nobody else votes on it. Nobody else has the ability to tell you not to do it. They said there were multiple checks to prevent that from happening. The council listed three checks. You can say the costs aren't prudently incurred, it's not at just a reasonable rate. So they said there are still mechanisms to prevent that kind of scenario from occurring. What's your response to that? Well, someone could file a complaint. But as the commission said, if you look at Paragraph 15 of the PGM order that's at Joint Appendix 186, the process for updating your 715. Well, someone surely would file a complaint. You said, like, that wasn't a sufficient check. But someone surely can file a complaint in a circumstance where someone was taking advantage of the 715 process to try to offload costs out of the region that really weren't properly regional benefits. Well, yes, Your Honor, but you can file a complaint about any rate. I know what we were talking about is whether or not it was actually part of the plan. It was approved in any way as part of the plan. And my point is that 715 criteria are unilateral. I totally understand that. They say, therefore, that they're not selected, but they're approved, right? That's the distinction. They're approved. The quote that you read earlier, they're approved for purposes of making sure that they fit in with the rest of the plan. In other words, they don't create reliability problems of their own by including them in the plan. But that's the reason why they're included in the plan. They're not approved in the sense of somebody thinks that this is satisfying a regional requirement because there is no such regional requirement that's being satisfied. So it comes down to, I mean, I'm trying to figure out what the heart of the case is, but I think the heart of the case maybe is regional benefits necessarily the determinant, in which case you would have a problem, or is regional planning criteria necessarily or appropriately. It doesn't have to be necessarily for you to win appropriately the determinant. Is that a fair way to look at it? Well, Your Honor, I think that we would have the better of either of those arguments, but I will say the eligibility for regional cost allocation turning on the region selecting it as part of the regional plan was not only in Order 1000, but this court affirmed that. It specifically discussed that at page 83 of the South Carolina Public Service Commission and recognized that that was a requirement and cited Paragraph 539 of Order 1000 and 1000A, Paragraph 579, both of which specifically say to be eligible for this regional cost allocation because the whole point of Order 1000 was to encourage regional planning. And the problem was, in the past, individual transit— Not just encourage it, require it. Exactly, but the point was, in the past, individual transmission owners had their individual plans and the idea of regional planning was everybody just put their plans together largely for feasibility purposes. And what the commission wanted to do was to have a process by which the entire region got together and tried to find more efficient and cost-effective solutions to regional needs, not to individual transmission owner planning. And that's why the regional cost allocation accompanies the regional planning that the region does in the individual. And Order 1000 actually says that a transmission owner cannot unilaterally make itself get regional cost allocation for a project. And that's Paragraph 564 of Order 1000. So why did FERC initially approve this scheme with an operating agreement that seems pre-amendment clearly permitted regional cost allocation not only for the national safety standards and not only for the regional PJM standards, but also for whatever might—some things that appear on the 715? Well, that's why I directed your attention to that paragraph in the rehearing order, because that makes it clear that what the commission was thinking this would apply to were regional projects. Yeah, but that's sort of an odd thought where the scheme is national safety standards, regional planning standards, 715 standards. It's an odd view of 715 standards as shorthand for regional standards in the context of that scheme. Well, no, Your Honor. What I think is that it was not necessarily contemplated at the time that there would be 715 projects that would implicate this allocation. I mean, at the time, this proposal was—they originally proposed these rebuilds as supplemental projects, which would have been entirely charged to them. I'm sorry, but Schedule 6 on its face says that the national safety standards, the regional planning standards, and the individual criteria as filed on 715. But as we know from the statistics, most of these local criteria projects are low-voltage projects, which would not have regional cost allocation. And they were allocated— permits regional allocation for the high-voltage ones, along with some pretty strong language saying that high-voltage projects have regional benefits. Well, Your Honor, these high-voltage projects were not proposed until after those—the tariff was approved. And so I don't know what high-voltage projects there would have been that were responsive only to 715 criteria that would have been—I'm not aware that that is— But I assume high-voltage projects weren't a new thing in 2013 or whatever. Well, in response to 715 criteria, though, Your Honor, because they are largely low-voltage, smaller projects. And these had not been proposed at that time. These weren't proposed until 2014. And so I don't know that the issue of high-voltage local criteria projects was ever even addressed. If there are no further questions. Thank you. Thank you. Thank you, Your Honors, and may it please the Court. Judge Cassas, in response to our earlier colloquy on page 48 of our brief, we made the argument, citing our refeering request at Joint Appendix 295 to 297, that FERC should have adopted our alternative suggestion to make the end-of-life criteria part of the regional standards or the other standards. I think one of the key colloquies that I heard in Ms. Perry's argument was being asked, does FERC still believe that high-voltage facilities have regional benefits? I didn't really hear an answer to that, so I do—I know it's in our brief, so I will repeat what was said in 2013. And that is, we find that high-voltage transmission facilities have significant regional benefits that accrue to all members. And they went on in the next paragraph to list about six different regional benefits. And counsels noted that under the DFAC's formula, there were certain things that flow, but obviously admitted the other postage stamp, which are designed to get at those criteria. These facilities remain today classified as regional facilities. They are because they're high-voltage facilities, and they have the same regional benefits that FERC not only has recognized in 2013, but continues to apply. There's nothing in their brief that says they don't find that these facilities have regional benefits. They do. Getting to the selection point, I think counsel said at one point that the selection ensures that things that are selected have regional benefits, I guess implying that things that are not selected don't. That is not true, if that's the implication. The selection process in this case we know happened only because a majority of the voters, using their weighted votes in the committee, voted out these projects from regional allocation. That says nothing about whether the projects themselves have regional benefits. That's what FERC is here to decide. FERC can't simply just rubber stamp and say because it didn't get selected, meaning that a majority of the owners decided that they didn't want to pay for these projects, that somehow that means that they won't be allocated. Again, if it were selected, it does have regional benefits. But if it's not selected, it still could have regional benefits. And that was carefully worded by counsel, I think. Exactly. And, Your Honor, we admit that many, many of the projects that aren't given regional cost allocation don't have regional benefits. We're not here to argue that everything should be. But where a project like this is proposed properly through the RCAP process, approved by the board, vetted by PGM, made determination that these projects not only have regional benefits, but they have to go into service in three years to avoid serious reliability projects, they need to be allocated in the same manner as other high-voltage projects. And it is not an answer to that to say that the other owners decided that they didn't want to pay for them. That's the free rider problem. That's what the cost causation rule is designed to prevent. And, again, we'd be happy to have a substantive debate about these criteria. That debate never occurred below. There was never a finding that these are inappropriate criteria, that they shouldn't be put into the RTEP, that they shouldn't be approved. And I submit the reason is because no owner could credibly make that argument, the argument that we should wait for the lines to fall down, and only then can you get regional allocation. If you were not to prevail in this case, the implications going forward would be? They would be, I think, significant. They would be essentially that there's a heckler's veto, in essence, of the other owners, that anything that they decide they don't want to pay for, they can then, quote, deselect for regional cost allocation, and FERC is obligated under its rationale in this case to rubber stamp that determination. I think that essentially gives the free rider problem prominence. It says the free riders get to decide, because there's going to be more of them than the dominions of the world, and that's not appropriate. I think for these reasons we would ask that the court vacate the challenged orders and remand so that FERC can apply its accepted, unchallenged cost allocation methodology to these high-voltage projects in the same manner that it applies it to other high-voltage projects in the region. Thank you. Can I ask first for counsel to come back up for a second? Sorry to do that. I have one question, which is the converse of the question I asked Mr. Franklin, which is if FERC were not to prevail, in this case, the implications going forward would be? That once the commission approves a cost allocation, it will have to adhere to the cost allocation forever, even if it finds that there is another just and reasonable cost allocation that can be applied. I mean, that's the other thing that we haven't really discussed is what the standard is here. I mean, yes, the commission had previously approved a cost allocation that allocated costs according to voltage and found it to be just and reasonable, but the point is this is a 205 filing. The commission didn't have to find that unjust and unreasonable. All it has to find is that this is just and reasonable, and based on the circumstances of this case, particularly given the fact that the 715 criteria are not adopted by the region and it's not a product of regional planning, the commission reasonably found in this case that it was just and reasonable allocation. So I think it's important to bear… Would this hamstring in any way, though, a ruling against you, hamstring the regional process in any way that you want us to be aware of, particularly when we're talking about this case? Well, certainly it would, Your Honor, in the sense that what the commission's goal in Order 1000, as recognized by this court, was that the region should select the projects that are more efficient and cost-effective solutions to regional needs, and this would undermine the exclusivity, basically, of that goal, which regional cost allocation is a function of the regional selection by all of the transmission areas in the region of more efficient and cost-effective solutions. It would seem like a narrow… A ruling against you in this case would be fairly narrow in the sense that high-voltage facilities are deemed to have regional benefits and therefore it's improper, and that rarely applies to the 715 form, so there would be a pretty limited universe of situations. Am I wrong in thinking that? Well, yes, Your Honor, because that concept would undermine the Order 1000 construct, because then anybody can decide that something has regional benefits and have it available for regional cost allocation, and that's not at all what was intended. And by regional, the cost allocation, again, is directed towards the selection of those projects that are going to solve particularly regional needs, and you're just talking about something that may have incidental benefits to others in the region. You don't necessarily know that it solves any regional needs, and as a matter of fact, with regard to these lines, you know there was no regional need that was satisfied by these projects, and so you're greatly expanding the scope, which was intended to encourage and require this regional planning, and you're permitting other projects that are not a product of that regional planning to benefit from the regional cost allocation. Okay. Thank you. Do you need a final word, Mr. Franklin? You can have it. I don't know that I need one, but I'll take one. I think one thing that will not undermine the regional planning process. One other issue that I didn't mention, which I do want to talk about. Because? Because it is something that, as I mentioned before, if there's a substantive objection to a particular criteria, that can always be vetted both through PGM and through FERC. Those three checks you identified before. And there's more. We're going to bear close to half the cost of this, so obviously there's a check right there. And I would also note that there are circumstances in which a need is identified or criteria are identified, and there might be multiple projects that can satisfy that. And in that circumstance, there is a selection process that we are not challenging in the sense that if there are multiple projects, somebody else has a better idea to do this. That, of course, will also be a subject for the regional planning. But all we're saying is FERC has to abide by the cost causation rule, which means costs follow benefits, not what form the need for the project was first noted on. Thank you. Thank you, Mr. Franklin and Ms. Perry, for your excellent arguments. The case is submitted. Stand, please.
judges: Henderson, Kavanaugh, Katsas